United States District Court
Southern District of Texas
**ENTERED**
January 22, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WFG NATIONAL TITLE INSURANCE COMPANY, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CASE NO. 4:18-CV-368 |
| KAVAC HOLDING COMPANY, LLC; TERRY FISHER; and GEORGE M. LEE, | § § § § | |
| *Defendants*. | § § | |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DEFENDANTS' MOTIONS TO DISMISS**

Three motions are before the Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B): (1) Defendant George M. Lee's Motion to Dismiss [ECF No. 14]; (2) Plaintiff WFG National Title Insurance Company's Motion for Entry of Default against Defendants Terry Fisher and Kavac Holding Company, LLC [ECF No. 18]; and (3) Defendants Terry Fisher and Kavac Holding Company, LLC's Motion to Dismiss [ECF No. 22]. Having reviewed the parties' filings[1] and the applicable law, the Court RECOMMENDS that Plaintiff's motion

---

[1]    In addition to the motions themselves, the pertinent filings include Plaintiff's First Amended Complaint [ECF No. 25], Plaintiff's responses to the motions to dismiss [ECF Nos. 15, 26], Defendant Lee's Advisory [ECF No. 30], Defendants Fisher and Kavac's Supplemental Motion

1

for entry of default be DENIED and that Defendants' motions to dismiss be
GRANTED IN PART AND DENIED IN PART.

## I. Background

This dispute arises from the foreclosure of a property encumbered by
multiple liens. Plaintiff WFG National Title Insurance Company's ("WFG")
primary contention is that its insureds were the purported first lienholders based on
an oral agreement with Defendant George M. Lee, who foreclosed on the property
and wiped out the insureds' lien without payment of the underlying debt. In the
alternative, WFG claims that even if its insureds were not the first lienholders, Lee
should have foreclosed on other available properties rather than foreclosing on the
sole property securing the insureds' loan. WFG also asserts various other claims,
including fraud and breach of contract.

The following facts are taken from the allegations in WFG's First Amended
Complaint [ECF No. 25].

Defendant Terry Fisher is the principal and sole member of Defendant
Kavac Holding Company, LLC ("Kavac"), a Texas limited liability company.
[ECF No. 25 ¶¶ 7, 9.] In 2014, Fisher and Kavac began developing a 40-lot
neighborhood in Houston named Fisher Estates. [ECF No. 25 ¶ 9.] In September
2014, Defendant George M. Lee loaned $700,000 to Kavac, and Kavac executed a

---

to Dismiss and Advisory [ECF Nos. 31, 32], and Plaintiff's response to the Supplemental Motion
to Dismiss  [ECF No. 33].

deed of trust granting Lee a security interest in all 40 of the lots in Fisher Estates. [ECF No. 25 ¶ 10; ECF No. 25-1.]

On April 13, 2015, George and Faye Walter and J&B Funding Group, LLC (collectively, "the Insureds") loaned Kavac $310,000 to build a home on a specified lot in Fisher Estates (the "Disputed Lot"). [ECF No. 25 ¶¶ 12, 13.] The Insureds and Kavac executed a Promissory Note [ECF No. 25-2] secured by a Deed of Trust and Security Agreement (the "2015 Deed of Trust") [ECF No. 25-3], a General Warranty Deed with Vendor's Lien [ECF No. 25-4], and Fisher executed a Guaranty [ECF No. 25-5]. [ECF No. 25 ¶ 12.] According to the amended complaint, the 2015 Deed of Trust "was to be in first lien position." [ECF No. 25 ¶ 12.] In particular, the amended complaint alleges that "Lee agreed to subordinate his [d]eed of [t]rust to subsequent construction lenders' development loans" and that "Lee, either directly or through his representatives, represented to the closing agent and WFG's Insureds that he would subordinate his [d]eed of [t]rust to the security interest of subsequent construction lenders, including Insureds." [ECF No. 25 ¶ 11.] On April 17, 2015, WFG issued a loan policy of title insurance in the amount of $310,000 to the Insureds. [ECF No. 25 ¶¶ 9, 13; ECF No. 25-6.]

A portion of the funds from the Insureds' construction loan to Kavac was used to satisfy an $860,000 loan, which was secured by a deed of trust lien on the Disputed Lot and held by Paull & Partners, LLC. [ECF No. 25 ¶ 15.] The lien

3

created by the Paull & Partners deed of trust, which is attached to the complaint and dated February 21, 2014 [ECF No. 25-7], was superior to Lee's deed of trust. [ECF No. 25 ¶ 15; ECF No. 25-1, page 3.] In exchange for this payment, Paull & Partners released its lien on the Disputed Lot. [ECF No. 25 ¶ 15.]

Kavac subsequently defaulted on the Insureds' loan. [ECF No. 25 ¶ 16.] On March 7, 2017, Lee, acting through a substitute trustee, conducted a foreclosure sale of the Disputed Lot and successfully bid $200,000 for the property. [*Id.*; ECF No. 25-9.] At the time of the foreclosure sale, Fisher and Kavac had executed a contract to sell the Disputed Lot to two other individuals (the Sandersons), but the sale had not yet closed. [ECF No. 25 ¶ 17.] WFG alleges that permitting the sale to the Sandersons to close instead of proceeding with the foreclosure sale would have allowed the Insureds' loan and part of Lee's loan to be repaid. [*Id.*] WFG further alleges that Lee, Fisher, and Kavac "conspired to proceed with the foreclosure sale so that Lee could collect the purchase price for the Disputed Lot by selling it [to] the Sandersons" himself and then pay Fisher and Kavac "an undisclosed fee in exchange for their participation in this scheme." [*Id.*]

On April 17, 2017, Lee conveyed the Disputed Lot to the Sandersons and paid Fisher and Kavac "some agreed-to percentage of the proceeds from this sale." [ECF No. 25 ¶ 18.] The Insureds' loan to Kavac was not repaid. [*Id.*] The Insureds

subsequently assigned their interests in the Kavac loan to WFG, which brings this suit. [ECF No. 25 ¶ 14.]

## II.  Motion for Entry of Default against Defendants Fisher and Kavac

WFG filed its original complaint against all Defendants on February 8, 2018. [ECF No. 1.] The summons and complaint were served on Fisher and Kavac on March 5, 2018. [ECF Nos. 11, 12.] On May 23, 2018, WFG filed a motion for entry of default against Fisher and Kavac because neither had timely filed an answer or otherwise responded to the suit. [ECF No. 18.] On June 15, 2018, Fisher and Kavac filed a Rule 12(b)(6) motion to dismiss [ECF No. 22] and an answer subject to that motion [ECF No. 23]. Because Fisher and Kavac have now "plead[ed]" and/or "otherwise defend[ed]," *see* Fed. R. Civ. P. 55(a), the motion for entry of default should be denied. *See Mason & Hanger-Silas Mason Co. v. Metal Trades Council of Amarillo, Tex. & Vicinity*, 726 F.2d 166, 168 (5th Cir. 1984); *Bass v. Hoagland*, 172 F.2d 205, 210 (5th Cir. 1949); *see also Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999) (recognizing "a policy in favor of resolving cases on their merits and against the use of default judgments"); *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by the courts in extreme situations.").

## III.  Motions to Dismiss

WFG's amended complaint identifies the following causes of action: (1) "Declaratory Judgment–Superiority of Lien and Equitable Subrogation"; (2) "Marshalling of Assets"; (3) "Common Law Fraud"; (4) "Fraud in a Real Estate Transaction"; (5) "Negligent Misrepresentation"; (6) "Wrongful Foreclosure"; (7) "Texas Uniform Fraudulent Transfer Act"; (8) "Civil Conspiracy"; and (9) "Breach of Contract." [ECF No. 25 ¶¶ 20–40.][2] Defendants' motions to dismiss seek dismissal of WFG's complaint for failure to state a claim upon which relief can be granted. [ECF Nos. 14, 22, 30, 31, 32.] Unlike Kavac and Fisher's motion, Lee's motion also contends that WFG's "equitable subordination" claim should be dismissed for lack of subject-matter jurisdiction because it fails to satisfy the diversity jurisdiction statute's $75,000 amount-in-controversy requirement, *see* 28 U.S.C. § 1332(a). [ECF No. 14 ¶ 6; ECF No. 30 ¶ 3.]

### A.  Legal Standards

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." On a Rule 12(b)(6) motion to dismiss, the moving party bears the burden of "prov[ing]

---

[2]  WFG's amended complaint lists "Constructive Trust" as a tenth "cause of action" [ECF No. 25 ¶¶ 41–49], but "[a] constructive trust is not a cause of action under Texas law." *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010). "Under Texas law, a constructive trust is . . . an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act." *Id.* (quoting *Haber Oil Co. v. Swinehart*, 12 F.3d 426, 436 (5th Cir. 1994)). Nothing in this report and recommendation precludes WFG from seeking and obtaining a constructive trust as an appropriate remedy if it prevails on one or more of its claims.

that no legally cognizable claim for relief exists." 5B Charles Alan Wright et al., *Federal Practice & Procedure* § 1357 (3d ed. 2017); *accord Cohen v. Bd. of Trustees of the Univ. of D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016); *Constr. Cost Data, LLC v. Gordian Grp., Inc.*, No. 4:16-cv-114, 2017 WL 2266993, at *3 (S.D. Tex. Apr. 24, 2017), *adopted*, 2017 WL 2271491 (S.D. Tex. May 22, 2017) (Ellison, J.); *In re Paracelsus Corp.*, 6 F. Supp. 2d 626, 630 (S.D. Tex. 1998) (Werlein, J.) ("under Rule 12(b)(6), the defendant bears the burden of proving that no relief could be granted"). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he allegations in the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *U.S. ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 872 (5th Cir. 2008) (quoting *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 467 (5th Cir. 2006)); *see also Cruz v. Beto*, 405 U.S. 319, 322 (1972). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations

in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for "lack of subject-matter jurisdiction." "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In evaluating a Rule 12(b)(1) motion, the court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2007).

### B. Analysis

#### 1. Plaintiff's "Declaratory Judgment–Superiority of Lien and Equitable Subrogation" Claim Should Be Dismissed in Part.

Pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), WFG seeks a court declaration that: (a) "Lee's Deed of Trust was subordinated by agreement of the parties and was therefore inferior to the Insureds' Deed of Trust"; (b) "Lee's foreclosure on the Disputed Lot did not extinguish the Insureds' lien under their Deed of Trust"; (c) "Plaintiff's lien is valid and subsisting against the

Disputed Lot"; and (d) "Plaintiff is equitably subrogated to the rights of Paull & Partners, and this lien is superior to Lee's lien." [ECF No. 25 ¶ 22.]

### a. Lien superiority is properly determined in a Declaratory Judgment Act claim.

Lee argues that WFG's declaratory judgment claim should be dismissed because a trespass-to-try-title action under § 22.001(a) of the Texas Property Code is "the exclusive remedy for determining substantive title claims related to real property in Texas" and declaratory judgment claims "are not available in actions related to title to real property." [ECF No. 14, pages 3–4 (citing *Martin v. Amerman*, 133 S.W.3d 262 (Tex. 2004)).][3] "[A]lthough a dispute concerning a lien does implicate an issue of title, it does not automatically require that the suit be brought under the Texas Property Code's provisions on trespass to try title." *Kingman Holdings, L.L.C. v. Bank of Am., N.A.*, No. 4:11-cv-33, 2011 WL 4431970, at *3–4 (E.D. Tex. Sept. 22, 2011) (collecting cases). Here, WFG "d[oes] not seek judgment affirming [its] own title," but a declaration that the Insureds' lien is superior to Lee's. *See Sunwest Operating Co., LLC v. Classic Oil & Gas, Inc.*, 143 F. App'x 614, 620 (5th Cir. 2005). As explained in *Kingman*, the validity

---

[3]   The Texas Supreme Court's decision in *Martin* is inapplicable because it involved the Texas Declaratory Judgments Act, whereas WFG sues under the federal Declaratory Judgment Act. "[I]n federal courts, federal law controls declaratory judgment actions." *Republic Servs., Inc. v. Texas Ecological Servs., Inc.*, 118 F. Supp. 2d 775, 777 n.2 (S.D. Tex. 2000); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 674 (1950) ("[T]hat the declaratory remedy which may be given by the federal courts may not be available in the State courts is immaterial.").

and superiority of a lien can be determined through a declaratory judgment action in federal court in Texas. 2011 WL 4431970, at *3–4.

### b. Texas Property Code § 13.001 does not bar the alleged oral agreement as to these Defendants.

There is no merit to Lee's contention that WFG's declaratory judgment claim must be dismissed because it is based on an "oral [subordination] and/or release"[4] that "is wholly ineffective under Texas Property Code sections 13.001 and 13.002." [ECF No. 14, page 3.] Lee asserts that any alleged "oral subordination and/or release agreements" are "void under section 13.001" because "WFG was aware at the time it closed the [Insureds' loan] and disbursed [l]oan proceeds that no written [subordination] or release agreement was ever executed by Lee or recorded of record in Harris County." [ECF No. 14, page 4.][5]

---

[4]   In his briefing, Lee interchanges the terms "subrogation" and "subordination," which refer to distinct legal concepts. "Subrogation occurs when an entity steps into the shoes of a creditor, typically by payment of a debtor's obligation to the creditor." *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 627 (Bankr. S.D. Tex. 2004). By contrast, "[s]ubordination is the ordering of priority of debts between creditors." *Id.* WFG alleges that Lee and the Insureds entered into an oral agreement under which Lee promised to *subordinate* his prior lien to the Insureds' new lien. The only portion of WFG's amended complaint that implicates *subrogation* are the separate allegations relating to the Paull & Partners lien.

[5]   Lee's briefing mentions the Statute of Frauds and lack of consideration but is conclusory and provides no meaningful supporting argument. [ECF No. 14, page 4.] Accordingly, Lee has failed to satisfy his Rule 12(b)(6) burden as to either defense. Lee's briefing is particularly inadequate because as affirmative defenses, the Statute of Frauds and lack of consideration "must clearly appear on the face of the complaint" and "must essentially be unquestionable" to support dismissal under Rule 12(b)(6). *AK Fortyseven Records Ltd. Co. v. Bahamas Ministry of Tourism*, No. 4:17-CV-3750, 2018 WL 3241225, at *3 (S.D. Tex. July 3, 2018) (Atlas, J.) (internal quotation marks and citations omitted); *Constr. Cost Data*, 2017 WL 2266993, at *6 (explaining that dismissal under Rule 12(b)(6) is only appropriate if the complaint itself forecloses any potential rejoinder or exception to an affirmative defense).

Section 13.001 provides, in pertinent part:

(a) A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

(b) The unrecorded instrument is binding on a party to the instrument, on the party's heirs, and on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument.

Tex. Prop. Code § 13.001(a)–(b). Section 13.002 states that "[a]n instrument that is properly recorded in the proper county is: (1) notice to all persons of the existence of the instrument; and (2) subject to inspection by the public." Tex. Prop. Code § 13.002. Assuming arguendo that Lee's alleged oral agreement to subordinate his lien to the Insureds' lien qualifies as an "instrument" within the purview of § 13.001,[6] WFG's complaint nonetheless plausibly alleges that Lee, Kavac, and Fisher had notice of that agreement. [*See* ECF No. 25 ¶¶ 11–12.] Thus, under § 13.001's plain language, the agreement is not void as to any of the Defendants.

### c. Plaintiff has met the amount-in-controversy requirement for diversity jurisdiction but has failed to allege facts sufficient to support entitlement to equitable subrogation.

Lee maintains that WFG "has alleged that it is equitably [subrogated] to a lien that was superior to Lee's lien due to a portion of the insured mortgage being used to pay of[f] the superior Paull & Partners lien," but that since a copy of the construction loan attached to WFG's amended complaint shows that "only

---

[6] The parties' briefing does not address this point.

$66,000.00 of the insured mortgage loan was used to obtain the Paull & Partners' lot release," the amount of WFG's "equitable [subrogation]" claim falls below the $75,000.00 minimum needed to invoke this court's diversity-based subject-matter jurisdiction and should be dismissed pursuant to Rule 12(b)(1). [ECF No. 14, pages 4–5.][7]

"In an action for declaratory relief, the amount in controversy is 'the value of the right to be protected or the extent of the injury to be prevented.'" *Hartford Ins. Group v. Lou–Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002) (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)). Here, WFG's declaratory judgment claim encompasses a request for equitable subrogation with respect to the Paull & Partners lien, but it also includes a request for a declaration that the lien the Insureds' 2015 Deed of Trust created is superior to the one Lee's deed of trust created and has not been extinguished by Lee's foreclosure on the Disputed Lot. [ECF No. 25 ¶ 22(a)–(c).] The value of the right the Insureds' 2015 Deed of Trust created is plausibly reflected by the value of the loan it secured: $310,000. Thus, even if the equitable subrogation portion of WFG's declaratory judgment claim is worth only $66,000, the claim as a whole easily exceeds the $75,000 threshold necessary to establish diversity jurisdiction.

---

[7] For the reasons explained in note 4 above, the Court construes Lee's references to "equitable *subordination*" in this portion of his briefing as referring to the part of WFG's declaratory judgment claim seeking a declaration that WFG is "equitably *subrogated* to the rights of Paull & Partners." [ECF No. 25 ¶ 22(d) (emphasis added).]

In response to Defendants' motions, WFG asserts that it alleged sufficient facts to support its equitable subrogation claim. Specifically, WFG contends that its (or the Insureds') indirect payment of the Paull & Partners lien was not "voluntary" but that it "paid these funds involuntarily to ensure [that it] secured a valid first lien position in the disputed lot." [ECF No. 15, pages 6–7; *see also* ECF No. 25 ¶ 15.]

> Texas courts interpret the doctrine of equitable subrogation liberally. The doctrine applies "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable, and which in equity should have been paid by the latter." *Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008) (citation omitted). A payment is only voluntary when the payor acts: (i) without an assignment or agreement for subrogation; (ii) without being legally obligated to pay; and (iii) without being compelled to pay in order to preserve rights or property. *Id.* at 145 (citation omitted). Texas courts similarly construe the "voluntariness" element liberally. *Id.* (citation omitted); *see also Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 702 (Tex. 2000) ("In the context of equitable subrogation, 'Texas courts have been liberal in their determinations that payments were made involuntarily.'" (citations omitted)).

*LGS Techs., LP v. United States Fire Ins. Co.*, No. 2:07-CV-399, 2015 WL 5934689, at *6 (E.D. Tex. Aug. 14, 2015), *report and recommendation adopted*, 2015 WL 5934690 (E.D. Tex. Oct. 12, 2015). WFG has failed to allege any facts plausibly suggesting that it or the Insureds were "legally obligated" to pay off the Paull & Partners lien or that they were "compelled" to do so "in order to *preserve* rights or property." To the contrary, according to the facts alleged, only Kavac was

13

under any sort of obligation with respect to Paull & Partners. WFG and the Insureds may have arranged for the Paull & Partners lien to be paid off so that they could *acquire* a first lien position, but they were not legally obligated to acquire a senior lien, nor were they compelled to do so in order to *preserve* any right or property they already held.

Therefore, WFG's declaratory judgment claim should be dismissed with respect to its request for equitable subrogation. Defendants' motions to dismiss should be denied as to the remainder of the declaratory judgment claim.

### 2. Plaintiff's Marshaling of Assets Claim Should Not Be Dismissed.

"Marshaling of assets" is an equitable doctrine that "derive[s] from 'the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds.'" *In re Mesa Intercontinental, Inc.*, 79 B.R. 669, 671 (Bankr. S.D. Tex. 1987) (quoting *Sowell v. Federal Reserve Bank of Dallas, Tex.*, 268 U.S. 449, 457 (1925)). "The doctrine asserts that a senior lien creditor with a right to proceed against more than one asset of a debtor must, in fairness, attempt to satisfy his claim(s) from assets that are not encumbered with junior liens. By exercising such a choice, there are more funds available for distribution to other creditors of the common debtor, thus satisfying these claims to the maximum extent possible." *In re San Jacinto Glass Indus., Inc.*, 93 B.R. 934, 937 (Bankr. S.D. Tex. 1988).

> [M]arshaling is not bottomed on the law of contracts or liens. It is
> founded instead in equity, being designed to promote fair dealing and
> justice. Its purpose is to prevent the arbitrary action of a senior lienor
> from destroying the rights of a junior lienor or a creditor having less
> security. It deals with the rights of all who have an interest in the
> property involved and is applied only when it can be equitably
> fashioned as to all of the parties.

*Mesa Intercontinental*, 79 B.R. at 671 (quoting *Meyer v. United States*, 375 U.S.
233, 237 (1963)). The elements of marshaling are: (1) "[t]he existence of multiple
secured creditors of a single debtor"; (2) "[t]he existence of multiple funds
belonging to a single debtor"; and (3) "[o]ne creditor alone may resort to all of the
funds." *Id.* at 671–72.

The thrust of WFG's marshaling claim is that even if Lee's lien on the
Disputed Property was senior to the Insureds' lien, Lee should have first sought to
collect the debt owed to him by foreclosing on one or more of the other 39 lots in
Fisher Estates subject to his deed of trust, rather than foreclosing on the Disputed
Property. WFG has sufficiently alleged the necessary elements of this claim: Lee
and the Insureds were secured creditors of Kavac/Fisher; multiple properties
belonged to Kavac/Fisher; and Lee alone had resort to all of the properties to
satisfy the debt owed to him.

In seeking dismissal of this claim, Lee asserts that: WFG, as a title company,
was "on notice that Lee subordinated or released his superior deed of trust [l]ien on
all but 7 lots in Fisher Estates, keeping the 7 to secure his $700,000.00 loan to

Kava[c]"; that "Lee foreclosed on all the remaining 7 lots, due to the Kava[c] default, so that there were no unencumbered lots in Fisher Estates subject to his deed of trust lien at the time" of the foreclosures; and that "the real property records of the foreclosures establish that the debt owed to [Lee] was not satisfied by the foreclosures, leaving a deficiency." [ECF No. 14, page 5; ECF No. 30 ¶ 4.] Because Lee's argument relies on factual allegations not contained in the amended complaint or any other document properly before the Court at this stage, it does not support dismissal under Rule 12(b)(6).

Kavac and Fisher contend that the marshaling claim should be dismissed as to them because they, as the debtors, did not "have any control over the priority of a foreclosure by a lien holder." [ECF No. 31, pages 2–3.] The marshaling doctrine "deals with the rights of *all* who have an interest in the property involved," *Mesa Intercontinental*, 79 B.R. at 671 (emphasis added) (quoting *Meyer*, 375 U.S. at 237), not just the rights of the senior lienholder. In *Mesa Intercontinental*, for example, the court concluded that a request for marshaling could not be granted because the guarantor (from whom the creditor allegedly should have first sought to collect the debt) was not before the court. *Id.* at 673. Applying that reasoning here, Kavac and Fisher are properly before the Court with respect to WFG's marshaling claim because they held the other lots to which only Lee could have looked to satisfy the debt owed to him.

16

This claim should not be dismissed.

### 3.  Plaintiff's Common Law Fraud Claim Should Be Dismissed.

Under Texas law,

> [t]he elements of common-law fraud are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury."

*D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 218 (5th Cir. 2018) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009)). Where fraud is alleged, Federal Rule of Civil Procedure 9(b) "creates a heightened pleading requirement that 'the circumstances constituting fraud . . . shall be stated with particularity.'" *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 872 (5th Cir. 2008) (quoting Fed. R. Civ. P. 9(b)). "[A]lthough the requirement for particularity in pleading fraud does not lend itself to refinement, . . . the who, what, when, and where must be laid out." *Southland Securities Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 363 (5th Cir. 2004) (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 349 (5th Cir. 2002)).

Defendants argue that WFG's common-law fraud claim fails to satisfy Rule 9(b). [ECF No. 14 ¶ 8; ECF No. 31, pages 4–6.] The Court agrees. Paragraph 11 of

the amended complaint alleges that "Lee, either directly or through his representatives, represented to the closing agent and WFG's Insureds that he would subordinate his [d]eed of [t]rust to the security interest of subsequent construction lenders, including Insureds." [ECF No. 25 ¶ 11.]. At paragraph 28 of the amended complaint, WFG alleges that "Lee, Kavac, and Fisher represented to the closing agent and Insureds that Lee would subordinate his [d]eed of [t]rust to the liens of subsequent lenders, including Insureds," and that "Defendants made these representations . . . knowing Lee had no intention of subordinating his [d]eed of [t]rust to Insureds' lien." [ECF No. 25 ¶ 28.] Taken together, paragraph 11's vagueness as to who made the alleged misrepresentation, that same paragraph's facial inconsistency with paragraph 28's allegation that all three Defendants made the misrepresentation,[8] and the absence of further details regarding the circumstances surrounding the alleged misrepresentation,[9] demonstrate that WFG's common-law fraud claim falls short of Rule 9(b)'s requirement that a plaintiff allege "the identity of the person making the misrepresentation." *Tuchman v. DSC*

---

[8]   *Compare* ECF No. 25 ¶ 11 (alleging that Lee or his "representatives" made the representation, but not alleging that Fisher and Kavac were Lee's "representatives") *with* ECF No. 25 ¶ 28 (alleging that Lee, Kavac, and Fisher made the representation).

[9]   For example, in response to Defendants' motions to dismiss, Plaintiff asserts that the amended complaint establishes that "[d]uring the closing of Plaintiff's Insureds' construction loan to K[avac], Lee, Fisher, and K[avac], directly or indirectly, represented to Plaintiff's Insureds and the closing agent that Lee would subordinate his [d]eed of [t]rust." [ECF No. 26, page 6 (citing ECF No. 1 ¶ 11).] Contrary to this assertion, nowhere in the amended complaint does Plaintiff allege that this representation occurred during the closing.

*Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting *Tel-Phonic Servs.,
Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)).

This claim should be dismissed.

### 4. Plaintiff's Fraud in a Real Estate Transaction Claim Should Be Dismissed.

"The elements [of                    a                    claim                    of]
statutory fraud in a real estate transaction under  the  Texas  Business  Code  are
identical to the elements of common law fraud, except that there is no required
proof of knowledge or recklessness as a prerequisite to the actual damages."
*Henley v. JP Morgan Chase Bank*, No. 3:10-CV-1344-P, 2010 WL 11619016, at
*2 (N.D. Tex. Dec. 22, 2010) (citing *Trinity Indus., Inc. v Ashland, Inc.*, 53 S.W.3d
852, 867 (Tex. App.—Austin 2001, pet. denied)); *see also* Tex. Bus. & Com. Code
§ 27.01. For the same reasons discussed in connection with its common-law fraud
claim, WFG's statutory fraud claim fails to comply with Rule 9(b)'s pleading
requirement and should be dismissed.

### 5. Plaintiff's Negligent Misrepresentation Claim Should Not Be Dismissed.

"Under Texas law, a claim for negligent misrepresentation consists of four
elements: (1) the representation is made by a defendant in the course of his
business, or in a transaction in which he has a pecuniary interest; (2) the defendant
supplies 'false information' for the guidance of others in their business; (3) the

19

defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005) (citing *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996)). Rule 9(b)'s heightened pleading requirement does not apply to WFG's negligent misrepresentation claim. *See id.* at 394; *see also Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 557 (S.D. Tex. 2012) (Ellison, J.), *aff'd sub nom. Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388 (5th Cir. 2014); *Renasant Bank v. Murphy*, No. 3:08-cv-45, 2009 WL 10695596, at *4 n.5 (S.D. Tex. July 28, 2009) (Ellison, J.) ("The pleading requirements of Federal Rule 9(b) do not apply to claims of negligent misrepresentation.").

Defendants argue that WFG's negligent misrepresentation claim should be dismissed because WFG has failed to plead facts plausibly suggesting justifiable reliance by the Insureds. [ECF No. 14 ¶ 6.] Specifically, Lee contends that it was "impossible" for the Insureds to "justifiably rely on anything Lee could have said, since they all knew before they closed and disbursed the [loan] that a written, acknowledge[d] and properly recorded release/subordination was an essential element to fund the [I]nsureds' [loan] transaction, since Lee's recorded deed of trust lien was notice to each of his unsubordinated and unreleased deed of trust

lien." [ECF No. 14 ¶ 6.] The Court disagrees. Even if the ultimate enforceability of Lee's alleged agreement to subordinate his lien to the Insureds' lien required that the agreement be reduced to writing and properly recorded, Defendants have not shown that those steps had to have been taken before the closing of the Insureds' construction loan. Moreover, since Defendants all allegedly had notice of Lee's agreement, it is plausible that the Insureds justifiably relied on the misrepresentation for purposes of § 13.001 of the Texas Property Code.

This claim should not be dismissed.

### 6. Plaintiff's Wrongful Foreclosure Claim Should Be Dismissed as to Kavac and Fisher But Should Not Be Dismissed as to Lee.

A wrongful foreclosure claim under Texas law has three elements: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Foster v. Deutsche Bank Nat'l Tr. Co.*, 848 F.3d 403, 406 (5th Cir. 2017) (quoting *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).

WFG sues all three Defendants for wrongful foreclosure,[10] but it does not allege that Kavac or Fisher foreclosed on the Disputed Property, and the Court has

---

[10]   Although neither WFG nor the Insureds were the mortgagor, Texas law provides that "when [a] third party has a property interest, whether legal or equitable, that will be affected by [a foreclosure] sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale." *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988).

not located any caselaw holding that a borrower can be sued for wrongful foreclosure of its own property. The wrongful foreclosure claim should therefore be dismissed as to Kavac and Fisher.

WFG has adequately pleaded a wrongful foreclosure claim against Lee, however. The first element—a defect in the foreclosure proceedings—is satisfied by WFG's allegations that, at the time of the foreclosure sale, Fisher and Kavac had executed a contract to sell the Disputed Lot to the Sandersons, that permitting the sale to the Sandersons to close instead of proceeding with the foreclosure sale would have allowed the Insureds' loan to be repaid, and that by proceeding with the foreclosure sale instead, Lee collected the sale proceeds and paid Kavac and Fisher a percentage of those proceeds. *See Am. Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 587 (Tex. 1975) (noting that the irregularity in the foreclosure sale proceeding need only be "slight"). Although WFG does not allege the value of the Disputed Property at the time of the foreclosure sale, the value of the Insureds' loan secured by the property ($310,000) plausibly suggests that the $200,000 sale price was grossly inadequate, thereby satisfying the second element. As for the third element, WFG plausibly alleges that the Defendants' purported scheme contributed to the artificially low foreclosure sale price. This claim against Lee should not be dismissed.

### 7. Plaintiff's Claim under the Texas Uniform Fraudulent Transfer Act Should Be Dismissed.

The Texas Uniform Fraudulent Transfer Act (TUFTA), Tex. Bus. & Comm. Code § 24.001 *et seq.*, prohibits several types of fraudulent transfers. "A plaintiff must satisfy three elements to establish a claim under TUFTA: (1) a debtor-creditor relationship must exist between the parties; (2) the debtor must have incurred an obligation; and (3) the debtor must have incurred the obligation with the actual intent to hinder, delay, or defraud the creditor." *BAC Home Loans Servicing, LP v. Texas Realty Holdings, LLC*, 901 F. Supp. 2d 884, 915 (S.D. Tex. 2012) (Miller, J.).

WFG brings its TUFTA claim against Kavac only. [ECF No. 14 ¶ 36.] WFG alleges that "[w]hen Kavac entered into the construction loans with Insureds, it intended to hinder, delay, or defraud Insureds" and further alleges that "Kavac retained control or possession of the Disputed Lot after Lee's foreclosure" and that "Kavac removed or concealed assets." [*Id.*] These allegations are nothing more than threadbare recitals of the statutory language, *see* Tex. Bus. & Comm. Code § 24.005(b)(2) and (7), and therefore do not render WFG's claim plausible. Because the amended complaint is bereft of any facts plausibly supporting the third element, this claim should be dismissed.

### 8.  Plaintiff's Civil Conspiracy Claim Should Not Be Dismissed.

A civil conspiracy is "a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Under Texas law, "[t]he essential elements of civil conspiracy claim are: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages as the proximate result." *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 404–05 (5th Cir. 2013) (citing *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)). Because it is a derivative tort, "a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Id.*; *see also Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) ("If a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails.").

WFG brings its civil conspiracy claim against Lee and Fisher only. [ECF No. 25 ¶ 38.] Lee and Fisher's sole argument for dismissal of this claim is that WFG has not alleged an underlying tort. [ECF No. 14 ¶ 9; ECF No. 30 ¶ 7; ECF No. 31, pages 8–9.] As explained above, WFG has stated a claim against all three Defendants for negligent misrepresentation and against Lee for wrongful

foreclosure. Because Lee and Fisher have not met their Rule 12(b)(6) burden, this claim should not be dismissed.

### 9.  Plaintiff's Breach of Contract Claim Should Be Dismissed.

"Under Texas law,  '[t]he  essential elements of  a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 499–500 (5th Cir. 2018) (quoting *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)). WFG alleges that Fisher breached his contract to guarantee the construction loan [ECF No. 25 ¶ 40] but does not identify which portion of the Guaranty Fisher breached and does not plead any other facts in support of the claim. The claim should therefore be dismissed.

## IV.  Conclusion

The Court RECOMMENDS that Plaintiff's motion for default judgment be DENIED.

The Court further RECOMMENDS that Defendants' motions to dismiss be GRANTED IN PART AND DENIED IN PART, as follows:

(1) The portion of WFG's declaratory judgment claim requesting relief on equitable subrogation grounds should be dismissed without prejudice, but the remainder of the declaratory judgment claim should not be dismissed;

(2) WFG's claims for common-law fraud, fraud in a real estate transaction, violation of the Texas Uniform Fraudulent Transfer Act, and breach of contract should be dismissed without prejudice;

(3) WFG's claim for wrongful foreclosure should be dismissed without prejudice, but only as to Defendants Kavac and Fisher;

(4) The motions to dismiss should be denied in all other respects.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed at Houston, Texas, on January 18, 2019.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**